IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **GENUINE ENABLING TECHNOLOGY LLC,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 17–135 |
| **SONY CORPORATION, et al.,** | : | |
| Defendants. | : | |

**Goldberg, J.**  April 12, 2021

## MEMORANDUM OPINION

Before me is a discovery dispute regarding damages in this patent infringement action. Plaintiff Genuine Enabling Technology LLC ("GET") requests that I compel Defendants Sony Corporation and Sony Interactive Entertainment LLC's (collectively, "Sony") to produce revenue information from video games playable on Sony's PlayStation 4. Sony objects to this request, asserting that there is no link between GET's damages claim and the requested discovery.

The accused technology at issue is a feature of PlayStation 4's controller that allows a user to plug a headset into the controller and communicate with other users. GET alleges that this technology will likely lead to the sale of games playable on the PlayStation 4 under a convoyed or derivative sales theory of damages. In other words, GET posits that the Sony headset component is connected to sales of games used with the PlayStation 4 and, thus, revenue generated from those sales is discoverable.

For the following reasons, I find that GET has demonstrated the baseline relevance required by Federal Rule of Civil Procedure 26. I will, however, not yet specify what Sony must produce

until after Sony submits an affidavit regarding the time and costs associated with producing this information.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

In a patent infringement action, "[u]pon finding for the plaintiff[,] the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. In Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), the court provided a list of fifteen factors relevant to the determination of the amount of a reasonable royalty for a patent license. The following Georgia-Pacific factor is most relevant to the discovery issue before me: "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." Id. (emphasis added). "'[C]onvoyed' or 'derivative' sales occur where the sale of one thing is likely to cause the sale of another, such as selling a razor and then also being able to sell the blades to go with it." Proctor & Gamble Co. v. Paragon Trade Brands, Inc., 989 F. Supp. 547, 610 (D. Del. 1997).

"Courts have granted motions to compel discovery requests extending to unaccused products where the plaintiff had asserted a derivative or convoyed sales theory of damages, and where the plaintiff has sufficiently articulated how the documents at issue are relevant to that

2

theory." Invensas Corp. v. Renesas Elecs. Corp., No. 11-448, 2013 WL 12146531, at *3 (D. Del. May 8, 2013) (collecting cases).

## II. ANALYSIS

For the following reasons and in light of the above precedent, I find that the requested discovery is compliant with Rule 26.

GET asserts that its patented technology—the ability to transmit an audio input signal from a microphone as part of the combined data stream—is infringed by the PlayStation 4's feature that "allows gamers to use a headset or similar hardware plugged into the controller to communicate with other gamers while playing any game that is playable on the PlayStation 4 system." (D.I. 193 at 3.) GET presses that because all PlayStation 4 games are playable while using this feature, licensing revenue and sales data from these games, including third-party games, are relevant as convoyed or derivative sales to its reasonable royalty damages calculation.

To support the connection between the headset feature and licensing revenue, GET cites to the following:

- The deposition testimony of Sony's witness, Douglas Evans, who testified that "[p]art of our incentive is to win the console generation. It's important because early leads within a console generation leads to overall success. If a console does well, then sales of accessories and software, games also do well. They follow the trail of a console." (D.I. 193 at 7 (citing Douglas Evans Dep. Tr., 01/12/21, at 17:2–7).)

- An advertisement for PlayStation 4's party to voice chat function. (D.I. 193-5 at 2.) The advertisement states in relevant part:

    Creating and joining a party on PlayStation®4

    Joining a PlayStation™Network party allows you to communicate with group members via voice chat and text messages.

    Parties on PlayStation 4

    Join a party to voice chat with your friends and other players while using a game or other application. . . .

(Id.)

- A Sony marketing presentation for Fiscal Year 2014, featuring a slide titled "Currently, Non-Gaming Offerings are Not a Top Category Driver of Console Purchase." (D.I. 193-10 at 3.) The slide lists "Online/Social Gaming" as a "Hardware Category Driver." (Id.) "Online/Social Gaming" is given a score of six for "Recommended Importance" to "Next Gen Non-Rejecters," a score of 4 for "Recommended Importance" to "Connoisseurs," and a score of 2 for "Recommended Importance" to "Connectors." (Id.) And, under a column titled "Alignment with Current Strategy," "Online/Social Gaming" is noted as a "Current PS4 Pillar." (Id.)

For discovery purposes, I find that GET has sufficiently established the baseline relevance of the requested games revenue for two reasons. First, GET has articulated a convoyed sales theory. GET asserts that the sale of PlayStation 4's controller, which when used with a headset allows for communication between users while playing any game playable on PlayStation 4, is likely to lead to the sale of games playable on PlayStation 4. GET alleges that the requested games revenue is relevant to this theory because Sony manufactures and sells its own games playable on PlayStation 4 and has entered into licensing agreements with third parties who sell games playable on PlayStation 4. GET seeks to discover the revenue that Sony derives from the sale of its own PlayStation 4 games and from the licenses for those games sold by third parties as convoyed sales.

I also find that the documents and deposition testimony identified by GET provide some evidence of the connection between the sales of PlayStation 4 and games playable on that product. The evidence identified by GET appears to demonstrate Sony's promotion of players' ability to communicate with each other while playing games on PlayStation 4 and Sony's belief that this type of social gaming experience is a seemingly important driver of PlayStation 4 sales.

Sony contends that the link between the sale of the specifically infringing feature (the PlayStation 4 controller's transmission of an audio signal from a headset) and the convoyed sale (the games) is not sufficiently clear and disputes that the documents and deposition testimony

establish the necessary link. I disagree with Sony. GET has made the baseline showing of relevance as defined by Rule 26. Whether GET will actually be able to prove the asserted link for purposes of its damages case is another matter.

The reasoning in Invensas Corp. v. Renesas Electronics Corp. supports my finding. In that patent infringement case, the plaintiff sought information relating to three general categories of damages discovery, including marketing, lender, and investor documents concerning the product categories within which the accused products and other non-accused products were sold. 2013 WL 12146531, at *1. The plaintiff argued that this information was relevant to its damages theory of derivative sales and sales convoyed on the sale of the infringing products. Id. at *4. In support of its motion to compel this information, the plaintiff stated that the accused product sales promoted the sale of other non-accused product sales within the same product category and provided "some evidence" that the defendant promoted the compatibility of product families within the same product category, which included product families containing accused products. Id. The plaintiff also cited to documents that appeared to describe the defendant's strategy of providing a combination of the type of product that the accused products were and other non-accused products to its customers. Id. Based on this information, the court held that although it could not determine whether the plaintiff would "actually prove these asserted links for purposes of its damages case," the plaintiff had made a baseline showing of relevance under Rule 26. Id.

### III. CONCLUSION

For the foregoing reasons, I find that Sony's revenue information from (1) third-party licenses for the sale of games playable on PlayStation 4 and (2) the sale of its own games playable on PlayStation 4 are discoverable. Before I determine what Sony must produce, Sony shall file an affidavit regarding the time and costs associated with producing this information.

An appropriate Order will follow.